*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. A. WILKINS, Minor.

UNPUBLISHED
October 16, 2024
11:11 AM

No. 367560
Wayne Circuit Court
Family Division
LC No. 22-000427-NA

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor child, SAW, under MCL 712A.19b(3)(a)(*ii*) (parent deserted child for 91 or more days); MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of SAW. Before this case was initiated, respondent had multiple contacts with Children's Protective Services (CPS), for allegations of improper supervision and neglect of SAW, which were substantiated. In January 2022, respondent admitted to using crack cocaine while SAW was in her care. She also admitted to having bipolar disorder, schizophrenia, and anger management issues. Respondent was prescribed medication for her mental health, but had not taken medication since 2020.

Respondent entered inpatient substance abuse treatment in February 2022, but was terminated from services after an incident where she threatened and threw objects at staff. Respondent also entered services with Alternatives for Girls, but left those services voluntarily

---

[1] The trial court also terminated the parental rights of SAW's putative father under MCL 712A.19b(3)(a)(*i*) (parent is unidentifiable). SAW's father has not been identified and is not a party to this appeal.

before completion. On March 14, 2022, respondent was involved in a police incident, when she tried to enter the premises of her mother's home without permission. When police arrived, respondent told officers to shoot her mother, doused herself with gasoline, and tried to ignite the stream of gasoline in front of her. Respondent was transported to the hospital. She was discharged on March 21, 2022.

On March 25, 2022, the Michigan Department of Health and Human Services (DHHS), petitioned for SAW to be removed from respondent's care. At the time the petition was filed, respondent's whereabouts were unknown. Respondent was present for the April 14, 2022 preliminary hearing, but did not attend several subsequent hearings. On August 2, 2022, the trial court took jurisdiction of SAW, and a service plan was put into place.[2]

During the proceedings, DHHS, respondent's attorney, and respondent's guardian ad litem made multiple unsuccessful attempts to locate and communicate with respondent. DHHS checked respondent's last known address, continually made phone calls to hospitals and homeless shelters, monitored respondent's social media, remained in contact with respondent's family, and conducted jail and state searches, such as through OTIS, Bridges, and I-Chat. Respondent's contact with DHHS was sporadic and inconsistent. Respondent missed scheduled parenting times, and did not have contact with SAW during the proceedings.

On April 4, 2023, DHHS petitioned for the termination of respondent's parental rights to SAW. Respondent was present for a May 15, 2023 termination hearing, but was not present when termination proceedings continued on June 22, 2023.[3] During the termination proceedings, a foster care worker testified that he had three phone contacts with respondent between January 2023 and June 2023. DHHS was able to contact respondent by phone when she was at her mother's house. The foster care worker informed respondent of the service plan. Respondent was not referred to parenting classes, individual therapy, a psychological evaluation, parent partner services, substance abuse counseling, or drug screens because of respondent's lack of consistent communication, a phone number, an e-mail address, or a home address. Respondent was unwilling to provide DHHS with any information regarding her living situation and had no legal source of income of record.

The trial court found that DHHS made reasonable efforts toward reunification. The trial court terminated respondent's parental rights to SAW under MCL 712A.19b(3)(a)(*ii*); MCL

---

[2] Under the service plan, respondent was required to (a) attend all court hearings; (b) attend all weekly supervised parenting time visits; (c) participate in a psychological evaluation; (d) participate in individual counseling; (e) participate in infant mental health services or parenting classes; (f) maintain appropriate and suitable housing; (g) maintain contact with DHHS; (h) follow all mental health services; (i) obtain and maintain a legal source of income; (j) participate in a psychological evaluation; (k) sign all necessary releases of information; and (l) participate in a substance abuse assessment and weekly drug screens.

[3] Termination proceedings could not go forth on May 15, 2023, because respondent's attorney was not present.

712A.19b(3)(c)(*i*); and MCL 712A.19b(3)(j). The trial court also determined that termination of respondent's parental rights was in SAW's best interests. This appeal followed.

Respondent argues that: (1) DHHS did not make reasonable efforts toward reunification, (2) not one of the statutory grounds for termination was established, and (3) termination of her parental rights was not in the best interests of SAW. We conclude that none of these arguments have merit.

## II. STANDARD OF REVIEW

In a termination proceeding, the petitioner has the burden of proving at least one statutory ground for termination by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews "for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). If the petitioner establishes a statutory ground for termination, the trial court must terminate parental rights if termination is in the child's best interests. MCL 712A.19b(5). This Court reviews for clear error the trial court's decision on the best-interest issue. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). A trial court's decision regarding reasonable efforts to reunify is also reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 257; 976 NW2d 44 (2021). Clear error occurs if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Mason*, 486 Mich at 152 (quotation marks and citations omitted). This Court gives deference to the trial court's special opportunity to assess the credibility of witnesses. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## III. REASONABLE EFFORTS

Respondent first argues that DHHS failed to make reasonable efforts to reunify her and SAW because DHHS failed to take the necessary actions to locate respondent. Specifically, respondent argues that DHHS had an obligation to follow the Absent Parent Protocol (APP) and failed to do so. We disagree.

Generally, DHHS has a statutory duty to make reasonable efforts to reunify the child and family before seeking termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." See *In re Hicks/Brown*, 500 Mich at 85-86. DHHS must encourage parents to actively participate in the service plan, and "foster care worker[s] must make an attempt or efforts to identify and locate absent parents(s)/legal guardian or putative father." *In re Rood*, 483 Mich 73, 97; 763 NW2d 587 (2009) (quotation marks and citation omitted). "If a parent is absent, [DHHS] must consult the [APP] to ensure [DHHS] workers . . . and the courts address the absent parent issue as early as possible in child protection proceedings." *Id*. at 98 (quotation marks and citations

omitted). "The APP defines an absent parent as including a legal parent whose whereabouts are unknown." *Id*. at 98 n 32, citing APP, § B(3)(b), p 5.[4]

In this case, DHHS made reasonable efforts to locate and communicate with respondent. DHHS had no obligation to follow the APP because respondent's whereabouts were not completely unknown throughout proceedings. At the time DHHS petitioned for SAW's removal from respondent's care, on March 25, 2022, respondent's whereabouts were unknown. However, between March 2022 and July 2022, DHHS was able to make sporadic contact with respondent. Respondent attended the April 14, 2022 preliminary hearing. The CPS specialist testified that respondent was offered services for employment, mental health, and housing, in May 2022, but failed to complete those services. The CPS specialist did not have a working phone number for respondent. Similarly, the foster care worker testified that she scheduled parenting time between respondent and SAW, but respondent failed to attend.

Between July 2022 and October 2022, respondent's whereabouts remained largely unknown. She had not provided a credible address and the phone number she provided was not active. But, on October 30, 2022, DHHS was informed that respondent contacted her guardian ad litem through Adult Protective Services and stated that she was in the hospital.[5] On April 10, 2023, DHHS had contact with respondent by phone while respondent was at her mother's home. Respondent was unwilling to provide DHHS with information regarding where she was living, only stating that it was "complicated." Respondent provided no contact information to DHHS and said that she did not have a phone.

DHHS made additional phone contact with respondent on April 18, 2023 and May 11, 2023. During DHHS's contacts with respondent, she was reminded about the service plan. Parenting times were scheduled, however, respondent never visited SAW since the beginning of the case. Respondent was present at proceedings when her termination hearing began on May 15, 2023. She attended remotely from a drug treatment program at Genesis House. However, respondent was not in attendance when termination proceedings continued on June 22, 2023.

Although respondent's contact was sporadic, she did make occasional contact with DHHS throughout the proceedings. Respondent was aware child custody proceedings were taking place, and knew DHHS petitioned to terminate her parental rights. Thus, she was not completely absent from proceedings. During periods where respondent's whereabouts were unknown, DHHS made reasonable efforts to locate her. DHHS checked respondent's last known address, continually made phone calls to hospitals and homeless shelters, monitored respondent's social media,

---

[4] The APP requires DHHS to make efforts to locate absent parents, including (a) electronic case management system searches; (b) statewide inquiries with Bridges and the Michigan Secretary of State; (c) phone book searches; (d) United States Post Office address searches; (e) inquiries with Friend of the Court; (f) inquiries with the county clerk's office for vital statistics; (g) contacting the respondent's last place of employment; (h) following leads provided by family or friends; (i) legal publication; (j) social media searches; (k) a Federal Bureau of Prisons inmate search; and (l) contacting local jails and state prisons. APP, § C(3).

[5] When DHHS attempted to visit respondent in the hospital, she was not there.

remained in contact with respondent's family, and conducted jail and state searches, such as through OTIS, Bridges, and I-Chat. When respondent's guardian ad litem told DHHS that respondent was in the hospital, DHHS attempted to visit respondent there, but was not successful. Moreover, legal publication which provided additional notice of this case was made by the trial court. Thus, respondent's claim that DHHS failed to take the necessary actions to locate her is without merit.

Respondent also argues that DHHS failed to make reasonable efforts to reunify because respondent was never referred for services. We disagree.

"While the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App 332, 339; 990 NW2d 685 (2022) (quotation marks and citation omitted).

DHHS was able to inform respondent of her obligations under the service plan. However, DHHS was never actually able to refer respondent for services because respondent failed to maintain consistent communication with DHHS. Respondent did not provide DHHS with any information regarding her living situation or how to contact her. To the extent DHHS could expend efforts to help respondent comply with the service plan, respondent failed to participate in services. During one of DHHS's contacts with respondent, DHHS was able to set up parenting times. One time was cancelled and the other time respondent failed to attend. When respondent attended treatment programs, before this case was initiated, she left services before completion, or was terminated from services for threatening behavior. Thus, this claim is without merit.

Respondent further argues that DHHS failed to provide her with special services to accommodate her mental illness. We disagree.

In addition to its obligation to make reasonable efforts to reunify families, DHHS also has obligations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. "Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *In re Hicks/Brown*, 500 Mich at 86, quoting 42 USC 12132. "[E]fforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Hicks/Brown*, 500 Mich at 86. However, DHHS "cannot accommodate a disability of which it is unaware." *Id*. at 87.

In this case, respondent informed DHHS that she was diagnosed with bipolar disorder, schizophrenia, and anger management issues. Respondent argues that DHHS was required to provide her with special services to accommodate her mental health issues, however, respondent does not specifically identify what services were needed. Respondent argues that DHHS should have provided her with housing. Respondent also argues that DHHS should have made a greater effort to maintain contact with her. But, respondent does not explain how these services relate to a disability. Further, DHHS did not err by failing to provide special services because respondent

did not make herself available for such services. For example, DHHS could not provide respondent with housing because respondent did not maintain communication with DHHS. When respondent did speak to DHHS, she was unwilling to provide any information about her housing situation.

Respondent suggests that DHHS should have expended additional efforts to verify respondent's diagnoses to establish what services were needed. In respondent's service plan, she was required to undergo a psychological evaluation. Had this evaluation taken place, DHHS would have been able to better understand respondent's needs. But respondent never made herself available for the psychological evaluation, or any other services. See *In re Frey*, 297 Mich App at 248. Thus, this claim is without merit.

Respondent also argues that DHHS failed to make reasonable efforts toward reunification because SAW was not placed with relatives. We disagree. During the preliminary hearing, respondent's attorney inquired about SAW being placed with SAW's maternal grandmother. However, DHHS explained that a placement assessment would not be conducted with respect to the maternal grandmother because she had five prior terminations and lacked suitable housing. No other relatives came forward, or were identified by respondent, as a potential relative placement. DHHS reasonably found that there were no viable relative placements. Thus, this claim is without merit.

In summary, the trial court did not clearly err by finding that DHHS made reasonable efforts to reunify respondent and SAW.

## IV. STATUTORY GROUNDS

Respondent argues that the trial court erred by finding statutory grounds for termination existed because DHHS failed to make reasonable efforts to facilitate the service plan. Respondent's argument is misguided.

At least one statutory ground under MCL 712A.19b(3) must be established by clear and convincing evidence to terminate parental rights. *In re Moss*, 301 Mich App at 80. "DHHS's duty to make reasonable efforts toward reunification is distinct from its duty to prove at least one statutory ground for termination by clear and convincing evidence[.]" *In re MJC*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 3. "The statutory framework makes clear that the Legislature did not intend for reasonable efforts to be linked to the statutory grounds[.]" *Id*. at ___; slip op at 5. "[T]he permissible statutory grounds for termination of parental rights are found in Section 19b of the Probate Code of 1939, MCL 710.21 *et seq.*, but the statutory requirement that reasonable efforts toward reunification be made is found in sections 19a and 18f." *Id*. at ___; slip op at 5 (footnotes omitted).

> [T]he only mentions of "reasonable efforts" made in section 19b are in reference to the requirement that reasonable efforts be made to locate a parent prior to terminating parental rights on the basis of desertion and in reference to the requirement that the court order no "additional efforts for reunification" if it finds that statutory grounds have been established and that termination is in the child's best interests. [*Id*. at ___; slip op at 5.]

Respondent incorrectly equates DHHS's duty to make reasonable efforts toward reunification with DHHS's duty to prove at least one statutory ground for termination. See *id*. at ___; slip op at 3. Respondent fails to make any further arguments regarding whether DHHS proved at least one statutory ground by clear and convincing evidence. Respondent's brief on appeal does not include any authority on the issue of statutory grounds. "Insufficiently briefed issues are deemed abandoned on appeal." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC*, 282 Mich App 410, 413; 766 NW2d 874 (2009). Thus, this issue was abandoned on appeal.

In any case, the trial court did not err by finding that the stated statutory grounds to terminate respondent's parental rights to SAW were established by clear and convincing evidence. For example, "MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if the conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (alteration omitted). In this case, the conditions leading to adjudication were respondent's substance abuse issues, untreated mental health issues, homelessness, and lack of income, as well as the neglect, abandonment, and lack of supervision of SAW. The trial court did not err by finding these conditions continued to exist. Respondent failed to participate in any services during the proceedings. Respondent did not consistently communicate with DHHS. She failed to participate in or benefit from any portion of her service plan. Accordingly, the trial court did not err by finding that this statutory ground was proven by clear and convincing evidence and only one statutory ground needs to be established to terminate parental rights. See *In re Moss*, 301 Mich App at 80. Therefore, respondent's argument is without merit.

## V. BEST INTERESTS

Finally, respondent argues that termination of her parental rights was not in SAW's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90 (footnote omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (internal citations omitted). The court may also consider the parent's compliance with the case service plan and visitation history with the child, as well as the child's age and well-being while in care. *In re Sanborn*, 337 Mich App at 277; *In re White*, 303 Mich App at 714. At the best-interest stage, the focus is on the child, not the parent. *In re Moss*, 301 Mich App at 87.

The trial court did not clearly err by finding termination of respondent's parental rights was in SAW's best interests. Respondent contends that she has a bond with SAW. However, SAW

was about one year old when she was removed from respondent's care and, during the proceedings, respondent did not see SAW at all. Respondent failed to attend scheduled parenting times. The record does not support SAW having a strong bond with respondent.

Respondent argues that she should have more time to rectify the conditions that led to the adjudication. However, respondent has done nothing to show she is working to improve conditions. She has not proven she has suitable housing or a legal source of income. She has not shown that she has rectified her mental health or substance abuse issues. When SAW was in respondent's care she was neglected, abandoned, and put in unsafe situations. Respondent admitted to using crack cocaine while SAW was in her care. It would be a risk to SAW's safety and well-being if she were returned to respondent.[6] The trial court did not clearly err by finding termination of respondent's parental rights was in SAW's best interests.

## VI. CONCLUSION

The trial court did not err by terminating respondent's parental rights to SAW. DHHS made reasonable efforts to reunify the family, however, respondent was noncommunicative and not receptive to services. The issue of statutory grounds was abandoned on appeal but, in any case, the statutory grounds to terminate respondent's parental rights were established. And the trial court did not clearly err by finding that termination was in SAW's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[6] Respondent also argues that the trial court should have considered placement with relatives. However, no suitable relatives came forward or were identified by respondent for placement. SAW spent the entirety of the case in a nonrelative foster home.